IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION


LAWRENCE L. BLANKENSHIP,
      Plaintiff,

vs.                                Case No.: 3:12cv216/MW/EMT

PAM CHILDERS, CLERK OF THE CIRCUIT COURT,
      Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Lawrence L. Blankenship ("Plaintiff" or "Blankenship") proceeds pro se in this civil rights action and has paid the filing fee in full (*see* doc. 1). The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2(E); *see also* 28 U.S.C. § 636(b)(1)(B)(C); and Fed. R. Civ. P. 72(b). Now before the court are the motion to dismiss the second amended complaint (doc. 20) and the motion for sanctions (doc. 31) filed by Defendant Pam Childers, Clerk of the Circuit Court for Escambia County, Florida ("Defendant" or "the Clerk"). Plaintiff responded to both motions (docs. 23, 28, and 35), and Defendant was permitted to file a reply to Plaintiff's response to the motion for sanctions (doc. 40). Upon consideration, for the reasons given below, the court recommends that Defendant's motion to dismiss be granted and that her motion for sanctions be denied.

I.      BACKGROUND AND PROCEDURAL HISTORY

In his initial and first amended complaints in this case, Plaintiff named as Defendant Ernie Lee Magaha, the former Clerk of the Circuit Court for Escambia County, Florida (docs. 1, 6). In his second amended complaint, filed on March 1, 2013, Plaintiff names the current Clerk of the Circuit

Court, Pam Childers, as the sole Defendant (doc. 14).[1]  Plaintiff's allegations are not easy to follow,[2] but he apparently asserts that in January 2010 Escambia County Circuit Court Judge Kenneth L. Williams, sitting in his appellate capacity, issued an order which directed entry of final default judgment in Plaintiff's favor in the appeal of his small claims case.  Plaintiff seems to allege that the Clerk of Court [who at that time was Mr. Magaha] failed to advise him of the need for additional records for that appeal, failed to timely enter Judge Williams' order, failed to send Plaintiff a copy of Judge Williams' order, and failed to enter the default judgment ordered by Judge Williams.[3] Plaintiff claims that Defendant deprived him of his constitutional rights under the First, Fifth, Seventh, Ninth, and Fourteenth Amendments, conspired against Plaintiff's rights, committed criminal civil rights

---

[1]  As Mr. Magaha is not named as a Defendant in the operative complaint, no summons was issued for him and he has not been served.  A summons was issued for Defendant Childers, but the docket reflects that no return of service has been filed for her.  Fed. R. Civ. P. 4(l) requires that proof of service be made to the court unless service has been waived.  Defendant does raise insufficiency of service in her instant motion, and thus—to the extent there is any basis for such a defense—she has waived it.  *See* Resolution Trust Corp. v. Starkey, 41 F.3d 1018 (5th Cir. 1995); Fed. R. Civ. P. 12(h) (1) (objections to sufficiency of process must be raised in answer or in pre-answer motion).

[2]  Mindful of Plaintiff's pro se status, the court has made every effort to construe Plaintiff's allegations liberally, even though they are often disjointed, repetitive, and confusing.  *See* Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998) (stating that " [p]ro se pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed.").  While not easy to decipher, the allegations—once carefully reviewed—are comprehensible enough.

[3]  This case is based on essentially the same events as those that underlie another case filed by Plaintiff in this court, Blankenship v. Allen, Case No. 3:11cv172/MCR/EMT.  In *Allen*, Plaintiff alleged that Escambia County Circuit Court Judge Michael G. Allen erred in affirming the county court's ruling against Plaintiff in a small claims action when another circuit court judge [Judge Williams] had previously ruled in Plaintiff's favor.  The district court dismissed the action on the ground that it lacked jurisdiction to conduct appellate review of orders entered in state court proceedings; it also noted that a judge is absolutely immune from a suit for damages (*see* doc. 11, order adopting and incorporating by reference Report and Recommendation at doc. 8).
        The state court case at issue is Judge Allen's decision in Blankenship v. Parks, Case 2009 AP 00016, an appeal in the circuit court of Plaintiff's small claims action, County Court Case 2009 SC 000169.  *See,* respectively, http://www.escambiaclerk.com/xml/xml.asp?ucase_id=9816818 (docket of circuit court appeal, last visited on November 14, 2013) and http://www.escambiaclerk.com/xml/xmlBM.asp?ucase_id=1678646 (docket of small claims action, last visited on November 14, 2013).  The court may take judicial notice of these electronic records.  *See* Fed. R. Evid. 201 (governing judicial notice of adjudicative facts); United States v. Berrojo, 628 F.3d 368, 369 (5th Cir. 1980) ("The doctrine of judicial notice permits a judge to consider a generally accepted or readily verified fact as proved without requiring evidence to establish it."); *see also* Mangiafico v. Blumenthal, 471 F.3d 391, 398 (2d Cir. 2006) (district court permissibly looked to docket sheets in ruling on motion to dismiss because "docket sheets are public records of which the court could take judicial notice"); In re Salem, 465 F.3d 767, 771 (7th Cir. 2006) (taking judicial notice of state court dockets and proceedings); Dawson v. Mahoney, 451 F.3d 550, 551 (9th Cir. 2006) (taking judicial notice of state court orders and proceedings); and United States v. Mercado, 412 F.3d 243, 247–48 (1st Cir. 2005) (taking judicial notice of state court docket entries).

violations, failed to perform her duties, was derelict in the performance of her duties, "tort[i]ous[ly] interfere[d] with [a] contract under Florida law," and violated several state statutes and procedural rules (*id.* at 5–6).[4] Plaintiff seeks a variety of relief, including monetary damages in the amount of $10,000.00 and, apparently, injunctive relief in the form of correcting the "failure to enter[ ] the default judgment," as well as any other relief the court deems appropriate (*id.* at 6).

Defendant attaches to her motion two exhibits which are at the center of Plaintiff's claims in the instant case. One of the exhibits is Escambia County Judge Joseph Q. Tarbuck's order in Plaintiff's small claims case and the other is Judge Allen's appellate order which discusses the prior order in the appeal issued by his predecessor, Judge Williams, but affirms Judge Tarbuck's ruling (doc. 20-1, respectively, Exhs. A, B).[5] These two orders contain the following information that is helpful in clarifying the factual backdrop of Plaintiff's allegations. On March 19, 2009, Judge Tarbuck entered a final judgment in a small claims case against Blankenship, who was the plaintiff in the case, and in favor of the defendants in the matter, Thomas Randall Parks ("Parks") and American Buildings, Inc. (*see* doc. 20-1, Exh. A). In his October 11, 2010, order Judge Allen outlined these facts: After filing his Notice of Appeal, Blankenship directed that the record be prepared, and he submitted an initial brief (*see* doc. 20-1, Exh. B). Blankenship did not, however, file a transcript

---

[4] In his initial complaint, which was not prepared on a court-approved civil rights form, Plaintiff asserted the existence of federal question jurisdiction as a basis for jurisdiction and referenced 42 U.S.C. § 1983, among other statutes (doc. 1 at 1). As required by the court, Plaintiff's first amended complaint (doc. 6) and this second amended complaint (doc. 14), were both filed on the court's civil rights complaint form to be used by non-prisoner litigants in federal question actions, including claims pursuant to § 1983. The court therefore treats Plaintiff's federal claims as brought under § 1983.

[5] In addition to these two exhibits, Defendant submitted copies of amended complaints Plaintiff filed in this court in Blankenship v. Allen, Case No. 3:11cv172/MCR/EMT, and Blankenship v. Miller, 3:12cv48/MCR/EMT.
 A district court "generally must convert a motion to dismiss into a motion for summary judgment if it considers materials outside the complaint." Day v. Taylor, 400 F.3d 1272, 1275–76 (11th Cir. 2005). The court may consider a document attached to a motion to dismiss without converting the motion into one for summary judgment, however, if the attached document is (1) central to the plaintiff's claim, and (2) undisputed. *See id.* at 1276. First, as to Exhibit B, Plaintiff attached a copy of this order to his initial complaint in this case (*see* doc. 1-1) and his first amended complaint (doc. 6 at 8–9). Thus in considering this exhibit the court does not consider materials outside the complaint. Also, both Exhibit A and Exhibit B are central to Plaintiff's claims, and Plaintiff does not dispute their authenticity. Moreover, the court may take judicial notice of matters of public record without converting a motion to dismiss into a summary judgment motion. *See* Bryant v. Avado Brands, Inc., 187 F.3d 1271, 1278 (11th Cir. 1999). Exhibits C and D likewise are public records. Thus none of Defendant's exhibits necessitates conversion of the motion to dismiss into a motion for summary judgment.

of the proceedings below or a statement of the evidence settled and approved by Judge Tarbuck, and Parks did not file an answer brief to Blankenship's initial brief (*id.*).[6]  On September 9, 2009, Blankenship filed a "Motion for Failure to Answer Appellant Brief and to Impose Cost[s] and Attorney['s] Fees and Sanctions on Appellee for Failure to Answer Appellant Brief" (*id.*).  On January 15, 2010, Judge Williams—acting in his appellate capacity as a predecessor to Judge Allen—issued an order that stated:

> This cause having come before the Circuit Court on appeal from the County Court, and the Court after reviewing the corrected record on appeal, hereby affirms the motion of the appellant in this matter.

(*id.*).

After quoting Judge Williams' January 15, 2010, order, Judge Allen noted that he was "uncertain of the intent" of Judge Williams in "stating that the motion of the appellant is affirmed" (*id.*).  Judge Allen noted that Blankenship sought to have the court decide issues of fact in his favor and against Parks and to have a default judgment entered in Blankenship's favor.  Judge Allen found, however, that the appropriate remedy for "the failure of an appellee to answer is for the appeal to be decided on the basis of the record before the Court with the benefit of any brief from the appellee" (*id.*).  Judge Allen again noted that Blankenship had failed to submit a transcript of the record or any statement of the facts settled and approved by the trial court; he also noted that Judge Tarbuck's order reflected that a conflict in the testimony existed and that judgment had been entered against Blankenship.  Thus, Judge Allen concluded, the trial judge had resolved the disputed issues of fact in favor of the defendants or otherwise concluded that Blankenship had failed to prove his case by the greater weight of the evidence (*id.*).  Judge Allen therefore found that Blankenship had failed to demonstrate that there was no competent substantial evidence before the trial court that would support the trial court's judgment.  So finding, Judge Allen affirmed the judgment of the lower court (*id.*).

The Circuit Court docket sheet, *see* n.3, *supra*, reflects, among other things, the filing of Plaintiff's notice of appeal on April 23, 2009, and his "Motion for Failure to Answer Appellant Brief and to Impose Cost[s] and Attorney[']s Fees and Sanctions on Appellee for Failure to Answer

---

[6] Defendant argues that under Florida's rules of appellate procedure Parks was not required to file an answer brief (doc. 20 at 2).  While not important to the disposition of this case, the court notes that this statement appears to be incorrect.  *See* Chmura v. Maxson, 46 So. 3d 158, 159 (Fla. 2d DCA 2010) (indicating that required appellate briefs include initial and answer briefs).

Appellant Brief" on September 9, 2009.  The docket sheet further reflects that on September 29, 2010, Judge Williams' January 15, 2010, order, was received and docketed.  There is nothing in the docket entry explaining the more than eight-month delay between the date Judge Williams signed the order and the date it was received and docketed.  Nor is there any explanation as to when, why, or on whose authority the case was referred to Judge Allen for action.  The next entry on the docket sheet is dated October 12, 2010, when Judge Allen's order was entered.  The final entry is dated October 28, 2010, when the mandate issued.

II.    MOTION TO DISMISS

Defendant identifies five grounds for dismissal.  Listed in the order in which the court addresses them, the grounds are: (1) the court lacks subject matter jurisdiction because the constitutional claims are "patently insubstantial"; (2) this action is barred by the Rooker-Feldman doctrine; (3) Defendant is entitled to quasi-judicial immunity; (4) this action is frivolous because it is duplicative and vexatious; and (5) the second amended complaint contains fatal procedural defects because it does not comply with pleading requirements in Rules 8(a) and 10(b) of the Federal Rules of Civil Procedure.  In a lengthy response, Plaintiff opposes each of these grounds for dismissal (doc. 23).

Subject-Matter Jurisdiction:  "Patently Insubstantial Claims"

Subject-matter jurisdiction is a threshold inquiry that the court is required to consider before addressing the merits of any claim.  *See* Fitzgerald v. Seaboard Sys. R.R., Inc., 760 F.2d 1249, 1251 (11th Cir. 1985) ("A federal court not only has the power but also the obligation at any time to inquire into jurisdiction whenever the possibility that jurisdiction does not exist arises.").  "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).

The mere assertion of a federal claim is not sufficient to obtain jurisdiction under 28 U.S.C. § 1331.  "Federal jurisdiction requires that a party assert a substantial federal claim." Davis v. Pak, 856 F.2d 648, 650 (4th Cir. 1988) (citing Hagans v. Lavine, 415 U.S. 528, 536, 94 S. Ct. 1372, 1378, 39 L. Ed. 2d 577 (1974)) (emphasis added); *see also* Baker v. Carr, 369 U.S. 186, 82 S. Ct. 691, 7 L. Ed. 2d 663 (1962) (holding that if jurisdiction is based on a federal question, the plaintiff must show he has alleged a claim under federal law and that the claim is not frivolous).  The Supreme Court

in <u>Hagans</u> noted: "Over the years this Court has repeatedly held that the federal courts are without power to entertain claims otherwise within their jurisdiction if they are so attenuated and unsubstantial as to be absolutely devoid of merit, wholly insubstantial, obviously frivolous, plainly unsubstantial, or no longer open to discussion." *Id.*, 415 U.S. at 536–37, 94 S. Ct. at 1378–79 (citations and quotations omitted).  While emphasizing that the insubstantiality threshold is a difficult one to meet, the Court concluded that the substantiality doctrine "remains the federal rule and needs no reexamination." *Id.* at 538.  The test for determining whether jurisdiction exists under § 1331 "is whether the cause of action alleged is so patently without merit as to justify . . . the court's dismissal for want of jurisdiction."  <u>Duke Power Co. v. Carolina Envtl. Study Grp., Inc.</u>, 438 U.S. 59, 70, 98 S. Ct. 2620, 2629, 57 L. Ed. 2d 595 (1978) (internal quotation marks and citations omitted); <u>Wyke v. Polk Cnty. School Bd.</u>, 129 F.3d 560, 566 (11th Cir. 1997) ("An 'insubstantial' federal question is one that is either 'obviously without merit,' or one that is clearly foreclosed by previous Supreme Court decisions.  Those decisions must 'leave no room for the inference that the questions sought to be raised can be the subject of controversy.'") (quoting <u>Hagans</u>, 415 U.S. at 537); <u>Davis v. Cluet, Peabody & Co.</u>, 667 F.2d 1371, 1373 n.7 (11th Cir. 1982) ("Dismissal for want of jurisdiction is appropriate only if the federal claim is frivolous or a mere matter of form.") (quotations omitted).  A complaint is frivolous "where it lacks an arguable basis either in law or in fact." <u>Neitzke v. Williams</u>, 490 U.S. 319, 325, 109 S. Ct. 1827, 1833, 104 L. Ed. 2d 338 (1989).

Other than simply asserting that Defendant violated his rights under the First, Fifth, Seventh, Ninth, and Fourteenth Amendments, Plaintiff does not explain the bases for his constitutional claims.  To the extent Plaintiff alleges that he was denied due process or access to the courts, Plaintiff lacks standing to pursue such claims for compensatory damages.[7]  Under the standing doctrine, a plaintiff

---

[7] "A Section 1983 procedural due process claim requires a plaintiff to prove three elements: (1) deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally-inadequate process." <u>Catron v. City of St. Petersburg</u>, 658 F.3d 1260, 1266 (11th Cir. 2011) (internal quotation marks omitted).  A substantive due process claim requires the similar elements of: 1) a deprivation, of 2) a property right, and 3) state action.  Only state action that is an arbitrary exercise of government power which "shocks the conscience," however, rises to the level of a substantive due process violation. <u>T.W. ex rel. Wilson v. School Board of Seminole County, Fla.</u>, 610 F.3d 588, 598 (11th Cir. 2010) (quoting <u>County of Sacramento v. Lewis</u>, 523 U.S. 833, 846, 118 S. Ct. 1708, 140 L. Ed.2d 1043 (1998)).  In order to prevail on a § 1983 action for denial of access to the courts, a plaintiff must show that he had a right of access to the courts that was denied as a result of interference by state actors. <u>Chappell v. Rich</u>, 340 F.3d 1279, 1283 (11th Cir. 2003).

must establish (1) an injury in fact, which is concrete and particularized, and actual or imminent; (2) a causal connection between the injury and the causal conduct; and (3) a likelihood that a favorable decision will redress the injury.  Granite State Outdoor Adver. v. City of Clearwater, Fla., 351 F.3d 1112, 1116 (11th Cir. 2003) (citing Bennett v. Spear, 520 U.S. 154, 167, 117 S. Ct. 1154, 137 L. Ed. 2d 281 (1997)).  The standing inquiry "is an essential and unchanging part of the case-or-controversy requirement of Article III" of the United States Constitution.  Lujan v. Defenders of Wildlife, 504 U.S. 555, 560, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992).

As noted previously, Plaintiff alleges that Defendant failed to advise him of the need for additional records in his small claims appeal, failed to timely enter Judge Williams' order, failed to send Plaintiff a copy of Judge Williams' order, and failed to enter the default judgment ordered by Judge Williams.  Plaintiff cannot show that he suffered a legal injury as a result of any of this alleged conduct or establish a causal connection between the injury he contends he suffered and Defendant's alleged conduct.  Based on Judge Allen's order, it is clear he concluded that Plaintiff was not entitled to default judgment in his favor and, as explained below, this court cannot sit in appellate review of Judge Allen's ruling.  Moreover, Plaintiff has not asserted and cannot show any causal connection between the Clerk's alleged conduct and Judge Allen's decision ruling against Plaintiff.  Plaintiff therefore lacks standing to pursue a due process claim or a claim of denial of access to the courts.  See Christopher v. Harbury, 536 U.S. 403, 415, 122 S. Ct. 2179, 153 L. Ed. 2d 413 (2002) ("the right [of access to the courts] is ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court"); Amnesty Int'l USA v. Battle, 559 F.3d 1170, 1177 (11th Cir. 2009); Bochese v. Town of Ponce Inlet, 405 F.3d 964, 974 (11th Cir. 2005).  Absent Plaintiff's having standing to bring a compensatory damages claim for denial of due process or access to the courts, the court lacks subject matter jurisdiction and thus any such claims should be dismissed.[8]  Bochese, 405 F.3d at 975.

---

[8]  Section 1983 allows for the recovery of nominal damages if the plaintiff's constitutional rights were violated but no injury resulted that would give rise to compensatory damages.  Slicker v. Jackson, 215 F.3d 1225, 1227 (11th Cir. 2000); see also Al–Amin v. Smith, 511 F.3d 1317, 1335 (11th Cir. 2008).  Plaintiff seeks general relief ("any such other relief as the Court may deem just and proper" (doc. 14 at 6)) that may be construed as seeking nominal damages.  As discussed below, however, Plaintiff's federal claims fail on other grounds and should be dismissed with prejudice.  Thus, even if Plaintiff has standing to pursue claims for nominal damages, the claims otherwise cannot succeed.

<u>Subject-Matter Jurisdiction: Rooker-Feldman Doctrine</u>

Although Plaintiff sues the Clerk of Court, in effect he seeks to have this federal court sit in appellate review of Judge Allen's order.  Pursuant to the <u>Rooker-Feldman</u> doctrine,[9] lower federal courts "do not have jurisdiction to act as appellate courts and [are] preclude[d] . . . from reviewing final state court decisions."  <u>Green v. Jefferson County Comm'n</u>, 563 F.3d 1243, 1249 (11th Cir. 2009).  The <u>Rooker- Feldman</u> doctrine is confined to cases that are "[1] brought by state-court losers [2] complaining of injuries caused by state-court judgments [3] rendered before the district court proceedings commenced and [4] inviting district court review and rejection of those judgments." <u>Exxon Mobil Corp. v. Saudi Basic Indus. Corp.</u>, 544 U.S. 280, 284, 125 S. Ct. 1517, 1521–22, 161 L. Ed. 2d 454 (2005); *see also* <u>Nicholson v. Shafe</u>, 558 F.3d 1266, 1272–74, 1278–79 (11th Cir. 2009) (explaining that, after <u>Exxon Mobil</u>, the <u>Rooker-Feldman</u> doctrine is limited and applied narrowly); <u>Cormier v. Horkan</u>, 397 F. App'x 550, 552 (11th Cir. 2010) (noting that, after <u>Exxon Mobil</u>, the Eleventh Circuit has declined to adhere to four-factor <u>Rooker-Feldman</u> test outlined in <u>Amos v. Glynn County Bd. of Tax Assessors</u>, 347 F.3d 1249, 1266 n.11 (11th Cir. 2003), and instead applies the strict language of <u>Exxon Mobil</u>).  "The doctrine applies both to federal claims raised in the state court and to those 'inextricably intertwined' with the state court's judgment." <u>Casale v. Tillman</u>, 558 F.3d 1258, 1260 (11th Cir. 2009).  "A claim is inextricably intertwined if it would effectively nullify the state court judgment, or it succeeds only to the extent that the state court wrongly decided the issues."  *Id.* (internal quotation marks and citation omitted).  Additionally, the <u>Rooker-Feldman</u> doctrine applies only when the state court proceedings ended before the federal action was filed.  <u>Nicholson</u>, 558 F.3d at 1275, 1277 n.11.

Here, Plaintiff is a state court "loser" complaining of injuries caused by a state court judgment. He asserts that he was deprived of a judgment in his favor in the state court proceedings due to the actions of the Clerk of Court, i.e., failing to advise him of documents needed for his appeal, failing to timely docket Judge Williams' order, failing to provide him with a copy of Judge Williams' order, and—most significantly—failing to enter the default judgment Plaintiff contends Judge Williams ordered.  It is therefore apparent that Plaintiff's claims are essentially a collateral attack on the final

---

[9]  *See* <u>Rooker v. Fid. Trust Co.</u>, 263 U.S. 413, 44 S. Ct. 149, 68 L. Ed. 362 (1923); <u>Dist. of Columbia Court of Appeals v. Feldman</u>, 460 U.S. 462, 103 S. Ct. 1303, 75 L. Ed. 2d 206 (1983).

judgment ordered in state court by Judge Allen in which he affirmed the lower court's decision that found against Plaintiff and in favor of the defendants. A judgment in Plaintiff's favor in the instant case would imply that the state court wrongly decided the issues before it. Viewed this way, Plaintiff's claims against Defendant are "inextricably intertwined" with the state court judgment. *See* Exxon Mobil Corp., 544 U.S. at 283–84, 125 S. Ct. at 1521 (noting that the federal complaints in the Rooker and Feldman cases "invited federal courts of first instance to review and reverse unfavorable state-court judgments."); Casale, 558 F.3d at 1260–61. Additionally, the state court proceedings appear to have ended prior to the filing of this federal action, as there is no indication in Plaintiff's complaint or the state court docket sheets that Plaintiff further appealed or sought review in state court before filing the instant action. For these reasons, under Rooker-Feldman this court lacks jurisdiction to hear Plaintiff's civil rights claims. Dismissal with prejudice is warranted on this ground. *See* Mickens v. 10th Judicial Circuit Court, 458 F. App'x 839 (11th Cir. 2012) (affirming Rooker-Feldman dismissal with prejudice).[10]

Immunity[11]

---

[10] Plaintiff's bare mention of a conspiracy against him, with absolutely no factual support, does not give rise to a cognizable constitutional claim. *See* Carter v. Dolce, 741 F.2d 758, 760 (5th Cir. 1984) (affirming district court's dismissal with prejudice of pro se plaintiff's claim, specifically noting that plaintiff's conspiracy claim was "without arguable merit and therefore frivolous in accordance with current case law on this point"). Nor is Plaintiff's vague reference to the commission of "criminal civil rights violations" (doc 14 at 5) even remotely sufficient to support a constitutional or statutory claim. Private citizens cannot petition the federal courts to compel the criminal prosecution of another person. *See* Otero v. U.S. Attorney Gen., 832 F.2d 141 (11th Cir. 1987) (stating that "a private citizen has no judicially cognizable interest in the prosecution or non-prosecution of another"). The decision to institute criminal proceedings lies within the discretion of the proper prosecuting authority. *See* United States v. Nixon, 418 U.S. 683, 693, 94 S. Ct. 3090, 41 L. Ed. 2d 1039 (1974) (observing that the executive branch has "exclusive authority and absolute discretion to decide whether to prosecute a case").

[11] Defendant submits that she is entitled to quasi-judicial immunity (doc. 20 at 1), but intermingles her arguments for such immunity with a discussion of qualified immunity without claiming her entitlement to qualified immunity (*id.* at 5, 6). Absolute quasi-judicial immunity and qualified immunity are distinct doctrines and, as discussed below, depending on the circumstances, either quasi-judicial or qualified immunity may apply to the conduct of a clerk of court. In any event, the defense of qualified immunity is inapplicable to official capacity claims, such as those asserted against Defendant Childers. *See* Bruce v. Beary, 498 F.3d 1232, 1249 n.33 (11th Cir. 2007); *see also* Alkire v. Irving, 330 F.3d 802, 810–11 (6th Cir. 2003) ("[A defendant] cannot claim any personal immunities, such as quasi-judicial or qualified immunity" for the purposes of the suit against him in his official capacity—the only immunity he may assert for the purposes of the official-capacity suit are forms of sovereign immunity, such as the eleventh amendment.").

Defendant Childers' liability in her individual capacity could be predicated on two theories: personal involvement and supervisory liability. *See* <u>Dean v. Barber</u>, 951 F.2d 1210, 1215 (11th Cir. 1992). Here, neither theory applies. Plaintiff makes no allegations that Defendant Childers had any personal or supervisory involvement whatsoever in the events giving rise to this action, nor can he given that Defendant Childers was not in office at that time. Thus, Plaintiff's claims can be brought against Defendant Childers in her official capacity only, rather than her individual capacity.

First, to the extent Plaintiff seeks injunctive relief against Defendant Childers, Plaintiff asserts no injury that is susceptible to such relief.[12] Second, Defendant Childers, acting in her official capacity, may be entitled to Eleventh Amendment immunity for damages.[13] Although the Eleventh Circuit has not addressed the specific issue of whether clerks of circuit courts in Florida are entitled to such immunity, it has determined that Eleventh Amendment immunity should be available to courts, as well as to various circuit court administrators and employees. *See* <u>McBrearty v. Koji</u>, 348 F. App'x 437, 440 (11th Cir. 2009) (applying Eleventh Amendment immunity to a Florida District Court of Appeal); <u>Zabriskie v. Court Admin.</u>, 172 F. App'x 906, 908–09 (11th Cir. 2006) (affirming dismissal of plaintiff's claims for monetary damages against Florida circuit court administrators and employees, finding that defendants were part of the state court system and therefore an arm of the state entitled to Eleventh Amendment immunity); <u>Badillo v. Thorpe</u>, 158 F. App'x 208, 212–13 (11th Cir. 2005) (same, with respect to circuit court judge and administrator); <u>Kaimowitz v. The Fla. Bar</u>, 996 F.2d 1151, 1155 (11th Cir. 1993) (finding that Eleventh Amendment bars suits against state courts and state bars). Although an analysis of whether Defendant Childers in fact is entitled to Eleventh Amendment immunity exceeds the scope of this Report and Recommendation on the present motion to dismiss, at least two of the four applicable factors appear to weigh in favor of finding that immunity exists. *See* <u>Manders v. Lee</u>, 338 F.3d 1304, 1309 (11th Cir. 2003) (*en banc*) (instructing that whether

---

[12]  To the extent Plaintiff claims he was "injured" due to the failure by the Clerk of Court to enter the default judgment in Plaintiff's small claims action that Plaintiff believes Judge Williams' order directed, and Plaintiff seeks injunctive relief from this court to redress that injury—that is, an order requiring Defendant Childers to now enter default judgment in Plaintiff's favor—as previously discussed, this court lacks jurisdiction to do so pursuant to the <u>Rooker-Feldman</u> doctrine.

[13]  Defendant does not mention Eleventh Amendment immunity in her motion. A court may, however, raise an Eleventh Amendment issue on its own motion. <u>McClendon v. Ga. Dep't of Cmty. Health</u>, 261 F.3d 1252, 1259 (11th Cir. 2001) (citing <u>Whiting v. Jackson State University</u>, 616 F.2d 116, 126 n.8 (5th Cir. 1980)).

an entity is an "arm of the State" for Eleventh Amendment purposes turns on consideration of four factors: (1) how the state defines the entity, (2) what degree of control the state maintains over the entity, (3) where the entity derives its funds, and (4) who is responsible for judgments against the entity). First, under Florida law clerks of circuit courts are considered to be a part of the "state courts system," which, as a component of the judicial branch, is a state agency. *See* Fla. Stat. § 111.071(3) (defining "agency of the state" or "state agency" as including judicial branch for purpose of payment of judgments against certain public officers); Fla. Stat. § 25.382 (defining state courts system as including officers of circuit and county courts); Fla. R. Jud. Admin. 2.440 (including clerk of court—when acting as an arm of the court—as part of judicial branch with respect to retention of judicial branch administrative records). Second, the State of Florida appears to be responsible for judgments against clerks of circuit courts, as it has a Risk Management Trust Fund that provides insurance for, among other things, "federal civil rights actions under 42 U.S.C. § 1983 or other similar federal statutes" that covers all state departments and their employees. *See* Fla. Stat. §§ 284.30, 284.31. Thus, under these two factors (i.e, how the state defines the entity and who is responsible for judgments against the entity), circuit clerks of court in Florida such as Defendant may be considered "arms of the state" and thus entitled to immunity to a suit for damages under the Eleventh Amendment. Manders, 338 F.3d at 1309.

The court further notes that, to the extent Plaintiff would seek to pursue claims against the former Clerk of the Circuit Court, Mr. Magaha, in his individual capacity, those claims would fail, based on the application of either absolute quasi-judicial immunity or qualified immunity. Clerks of court "have absolute immunity from actions for damages arising from acts they are specifically required to do under court order or at a judge's direction," but they are only protected by "qualified immunity from all other actions for damages." Hyland v. Kolhage, 267 F. App'x 836, 842 (11th Cir. 2008) (quoting Tarter v. Hury, 646 F.2d 1010, 1013 (5th Cir. 1981))[14]; Williams v. Wood, 612 F.2d 982, 984–85 (5th Cir. 1980) (per curiam) (clerk has absolute immunity when carrying out judge's explicit instructions and only qualified immunity when performing routine ministerial duties); Jenkins

---

[14] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

v. Clerk of Court, 150 F. App'x 988, 990 (11th Cir. 2005) (clerks of court are nonjudicial officials who have absolute immunity for their duties that are integrally related to the judicial process). "Absolute quasi-judicial immunity for nonjudicial officials is determined by a functional analysis of their actions in relation to the judicial process." Roland v. Phillips, 19 F.3d 552, 555 (11th Cir. 1994).

"A motion to dismiss a complaint on qualified immunity grounds will be granted if the 'complaint fails to allege the violation of a clearly established constitutional right.'" Griffin Indus., Inc. v. Irvin, 496 F.3d 1189, 1199 (11th Cir. 2007) (quoting St. George v. Pinellas Cnty, 285 F.3d 1334, 1337 (11th Cir. 2002)). Plaintiff's allegations do not demonstrate the violation of a clearly established federal right. Thus Mr. Magaha should be entitled to qualified immunity with respect to conduct involving ministerial duties, such as failing to advise Plaintiff of the need for additional documents in his appeal, failing to timely docket Judge Williams' order, and failing to provide Plaintiff with a copy of Judge Williams' order. To the extent that Plaintiff's allegations implicate quasi-judicial acts, such as carrying out any instructions contained in Judge Williams' order or concluding that the order may have been issued in error and referring the case for further review by a judge, Mr. Magaha would be entitled to absolute quasi-judicial immunity. Jenkins, 150 F. App'x at 990; Hyland, 267 F. App'x at 842. Because Mr. Magaha is immune from damages, and in his individual capacity can provide no other type of relief to Plaintiff, any attempt by Plaintiff to amend his complaint to name Mr. Magaha as a Defendant in this action would be futile. Bryant v. Dupree, 252 F.3d 1161, 1163 (11th Cir. 2001) (amendment of complaint need not be allowed where amendment would be futile).

Dismissal for Abuse of the Judicial Process and Failing to Comply with Rules 8(a) and 10(b)

The court need not consider Defendant's additional arguments for dismissal on the grounds of abuse of the judicial process for filing frivolous and duplicative actions and failure to comply with the pleading requirements. These grounds for dismissal would at most only result in a

recommendation of dismissal without prejudice,[15] and dismissal with prejudice of Plaintiff's federal claims has already been recommended on the ground that the <u>Rooker-Feldman</u> doctrine bars them.

### State Law Claims

Plaintiff's state law claims should be dismissed without prejudice. It is well established that once a plaintiff's federal claims are dismissed, there remains no independent federal jurisdiction to support the court's exercise of supplemental jurisdiction over state claims against a defendant. *See* <u>Baggett v. First Nat'l Bank of Gainesville</u>, 117 F.3d 1342, 1352 (11th Cir. 1997). Title 28 U.S.C. § 1367(c)(3) provides that the district court may decline to exercise supplemental jurisdiction over claims after it has dismissed all claims over which it has original jurisdiction. *See also* <u>United Mine Workers v. Gibbs</u>, 383 U.S. 715, 725–26, 86 S. Ct. 1130, 16 L. Ed. 2d 218 (1966). Where § 1367(c) applies, considerations of judicial economy, convenience, fairness, and comity may influence the court's discretion to exercise supplemental jurisdiction. <u>Baggett</u>, 117 F.3d at 1353 (citing <u>Palmer v. Hosp. Auth. of Randolph Cnty.</u>, 22 F.3d 1559, 1569 (11th Cir. 1994); <u>Exec. Software N. Am. v. United States Dist. Court</u>, 15 F.3d 1484, 1493 (9th Cir. 1994); <u>New England Co. v. Bank of Gwinnett Cnty.</u>, 891 F. Supp. 1569, 1578 (N.D. Ga. 1995); <u>Fallin v. Mindis Metals, Inc.</u>, 865 F. Supp. 834, 841 (N.D. Ga. 1994)). Taking these factors into account in this case, the undersigned concludes that Plaintiff's state law claims should be dismissed. The state court is best equipped to research and rule on matters of state law, and principles of comity suggest that it be allowed to do so.

### III.     MOTION FOR SANCTIONS

---

[15] Defendant submits that the second amended complaint should be dismissed on the ground it is a "shotgun pleading." A "shotgun pleading" is a pleading that "incorporate[s] every antecedent allegation by reference into each subsequent claim for relief or affirmative defense." <u>Wagner v. First Horizon Pharm. Corp.</u>, 464 F.3d 1273, 1279 (11th Cir. 2006). Shotgun pleadings make it "virtually impossible to know which allegations of fact are intended to support which claim(s) for relief." <u>Anderson v. Dist. Bd. of Trs. of Cent. Fla. Cmty. Coll.</u>, 77 F.3d 364, 366 (11th Cir. 1996). The Eleventh Circuit has routinely condemned "shotgun" pleadings. <u>Davis v. Coca–Cola Bottling Co. Consol.</u>, 516 F.3d 955, 979 & n.54 (11th Cir. 2008). Plaintiff's second amended complaint is not a textbook example of a shotgun pleading, although its allegations of numerous violations of state and federal law with no explanation of how Defendant's conduct violated those laws or why the purported violations entitle Plaintiff to the requested relief may effectively amount to a shotgun pleading. As Defendant acknowledges, however, "[t]his is an ultimately straightforward (but at first glance seemingly complicated) case . . . ." (doc. 20 at 2). Thus, although Defendant and the court may have at first struggled with Plaintiff's allegations because they were not clearly presented, the allegations were sufficiently manageable that "ultimately" both the court and Defendant were able to decipher and address them.

Defendants seeks sanctions pursuant to Fed. R. Civ. P. 11 against Plaintiff, largely for the same reasons presented in her motion to dismiss, including that this action was frivolous, vexatious, duplicative, and filed for the purpose of harassing Defendant (doc. 31). Plaintiff opposes the imposition of sanctions (*see* docs. 28, 35).

Rule 11 sanctions are warranted when a party files an action that: (1) has no reasonable factual basis; (2) has no reasonable chance of success based on the legal theory used, or that cannot be advanced as a reasonable basis to change existing law; or (3) is filed in bad faith for an improper purpose. Anderson v. Smithfield Foods, Inc., 353 F.3d 912, 915 (11th Cir. 2003). In assessing the propriety of imposing sanctions, the district court should examine "whether the party's claims are objectively frivolous—in view of the facts or law—and then, if they are, whether the person who signed the pleadings should have been aware that they were frivolous; that is, whether he would have been aware had he made a reasonable inquiry." Worldwide Primates, Inc. v. McGreal, 87 F.3d 1252, 1254 (11th Cir. 1996). "Pro se litigants are not immune from Rule 11 sanctions." Dean v. ARA Envtl. Serv., 124 F.R.D. 224, 227 (N.D. Ga. 1988). "That his filings are pro se offers [the pro se plaintiff] no impenetrable shield, for one acting pro se has no license to harass others, clog the judicial machinery with meritless litigation, and abuse already overloaded court dockets." Farguson v. MBank Houston, N.A., 808 F.2d 358, 359 (5th Cir. 1986).

In this case, Plaintiff seems to be operating obstinately under the incorrect—though perhaps sincerely held—notion that he is entitled to the default judgment he believes Judge Williams ordered. It therefore is not clear to this court that Plaintiff's motives in filing this action were vexatious or intended to harass Defendant and thus filed in bad faith for an improper purpose. What is clear is that Plaintiff's federal claims have no reasonable factual basis or reasonable chance of success under any legal theory. They are frivolous. The court must therefore consider whether Plaintiff should have been aware they were frivolous; that is, whether he would have been aware of their frivolous nature had he made a reasonable inquiry. Worldwide Primates, Inc., 87 F.3d at 1254.

Defendant submits that at the time he filed this action Plaintiff should have been aware that his claims were frivolous based on his past litigation history, particularly his unsuccessful case against Judge Allen (doc. 31 at 4–5). The court is well aware of Plaintiff's lengthy filing history in this

district alone, which the court's electronic filing system reflects extends back to 1997.[16] Although pro se parties are subject to being sanctioned, the Eleventh Circuit does not stringently impose sanctions on pro se plaintiffs. *See* Woods v. IRS, 3 F.3d 403, 404 (11th Cir. 1993) (finding "there can be no doubt that this is a frivolous appeal and we would not hesitate to order sanctions if appellant had been represented by counsel. However, since this suit was filed pro se, we conclude that sanctions would be inappropriate"); United States v. Morse, 532 F.3d 1130, 1133 (11th Cir. 2008) (imposing sanctions on plaintiff because his arguments were frivolous and he had been warned by the court not to raise them, but noting it was "reluctant to impose sanctions on pro se litigants"). The court does not believe that imposing sanctions against the pro se Plaintiff for filing this case is clearly warranted. Plaintiff's allegations in the two cases vary slightly and different legal standards may apply to a clerk of court as opposed to a state judge. Thus, simply based on his prior unsuccessful litigation the court cannot say with certainty that Plaintiff, who is untrained in the law, should have been aware that his claims were patently frivolous. And the fact that Plaintiff may have filed numerous other unsuccessful actions does not provide a basis for imposing sanctions in this case.

Although no recommendation of sanctions is now made, Plaintiff should be aware that if he attempts to relitigate the facts of this matter by filing yet another suit in federal court, he may subject himself to sanctions in the future. Such sanctions in this court could take the form of directing the clerk not to accept any future case filings by Plaintiff unless represented by counsel or upon obtaining prior leave of court to proceed pro se and/or by assessing monetary sanctions against Plaintiff.

Accordingly, it is respectfully **RECOMMENDED**:

1.      That Defendant's motion to dismiss (doc. 20) be **GRANTED.**

---

[16] *See* Blankenship v. Timothy, Case No. 3:12cv00364/RV/CJK; Blankenship v. Gulf Power Co., Case No. 3:12cv 266/MW/EMT; Blankenship v. Miller, Case No. 3:12cv48/MCR/EMT; Blankenship v. Allen, Case No. 3:11cv172/MCR/EMT; Blankenship v. Williams, Case No. 3:10cv250/MCR/EMT; Blankenship v. Simon, Case No. 3:10cv248/MCR/MD; Blankenship v. Claus, Case No. 3:05cv23/MCR/EMT; Blankenship v. Crown Craft Products, Case No. 3:97cv210/LAC/SMN; Blankenship v. Crown Craft Products, Case No. 3:97cv560/LAC; and Blankenship v. Barnett Bank, N.A., Case No. 3:98cv435/LAC/SMN. In a footnote, Defendant lists some of these cases (*see* doc. 31 at 4 n.3), along with several others. The case Defendant cites in the main text of her motion (*id.* at 4), however, is not the case against Judge Allen previously filed in this court (Blankenship v. Allen, Case No. 3:11cv172/MCR/EMT), which Defendant apparently intended to cite. Rather, it is a case Plaintiff filed against Judge John L. Miller in the Circuit Court for Santa Rosa Count, Florida, that Plaintiff appealed as far as the First District Court of Appeal.

       a.     Plaintiff's federal claims against Defendant should be **DISMISSED with prejudice**.

       b.     Plaintiff's state law claims should be **DISMISSED without prejudice** to his pursuing them in state court.

    2.     That Defendant's motion for sanctions (doc. 31) be **DENIED**.

    3.     That the clerk be directed to enter judgment accordingly and close the file.

At Pensacola, Florida this 14ᵗʰ day of November 2013.


                                       /s/ *Elizabeth M. Timothy*
                                       **ELIZABETH M. TIMOTHY**
                                       **UNITED STATES MAGISTRATE JUDGE**


## <u>NOTICE TO THE PARTIES</u>

**Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; <u>United States v. Roberts</u>, 858 F.2d 698, 701 (11th Cir. 1988).**